UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:                                              Chapter 11

RX Plus, LLC,                                       Case No. 19-40776 (NHL)

        Debtor.

--------------------------------------------------------X

### APPLICATION IN SUPPORT FOR THE ENTRY OF AN INTERIM ORDER AUTHORIZING THE DEBTOR-IN-POSSESSION TO UTILIZE CASH COLLATERAL OF FLUSHING BANK, CARDINAL HEALTH 110, LLC AS SUCCESSOR-BY-MERGER TO KINRAY LLC, SKYFI CAPITAL PARTNERS, INC. AND ROCHESTER DRUG COOPERATIVE AS SET FORTH IN THE APPLICATION PURSUANT TO 11 U.S.C. §§ 105, 361 AND 363 AND AUTHORIZING THE DEBTOR TO PAY ADEQUATE ASSURANCE TO THE DEBTOR'S VARIOUS UTILITY COMPANIES PURSUANT TO § 366 OF THE BANKRUPTCY CODE

        The application of RX Plus, LLC, the debtor-in-possession ("Debtor"), by its proposed attorneys, Weinberg, Gross & Pergament LLP, seeking the entry of an Interim Order Authorizing the Debtor to utilize cash collateral pursuant to Sections 105, 361, 363 and 366 of Title 11 of the United States Code ("the Bankruptcy Code") respectfully represents and states as follows:

### BACKGROUND INFORMATION

        1.      On February 7, 2019, (the "Petition Date") the Debtor filed a voluntary Petition seeking relief from its creditors pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sec. 101 *et. seq.* The Debtor has continued to remain in possession, custody and control of its business and its property pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

        2.      No trustee, examiner or official committee of unsecured creditors has been appointed or formed herein.

3.      RX Plus, LLC is a limited liability company organized and existing under the laws of the State of New York.

4.      The principal place of business of RX Plus, LLC is 71-30 Myrtle Avenue, Glendale, New York 11385 ("Premises").

5.      Since 2006, RX Plus, LLC has operated a general retail and specialty pharmacy centering on dermatological medications that are sold and distributed from the Premises. The business employs approximately 35 workers and utilizes a sales firm and has been a vibrant member of the community.  The 35 workers had been leased to RX Plus, LLC, but following the bankruptcy filing, the workers will probably become employees of RX Plus, LLC and will be paid directly by the Debtor.

6.      Rx Plus, LLC's mission is personal, patient care focused on patient education and optimal therapies at the most affordable costs for its patients. The Debtor's goal is to maintain a family-style approach to creating an environment conducive to optimal staff and patient interaction, as well as a learning environment for continued staff growth.

7.      The Debtor's principal assets consist of its accounts receivable (approximately $770,000.00), general inventory (approximately $100,000.00), prescription drug inventory (approximately $250,000.00), office equipment (approximately $30,000.00) and bank accounts (approximately $205,000.00). The bank accounts have been restrained, thus precipitating the need for the bankruptcy filing.

8.      At the present time, the amount of the Debtor's secured debt owed to Flushing Bank is approximately $2,200,000.00. Flushing Bank's security interest does not cover the prescription drug inventory, which security interest is held by Cardinal Health 110 LLC, as successor-by-merger to Kinray LLC ("Cardinal Health"), the Debtor's main supplier.

2

9.      Prior to the bankruptcy filing, the Debtor entered into several loan agreements with Flushing Bank, including a certain Line of Credit Note (Loan No. 600173), a certain Amended and Restated Promissory Notice (Loan No. 610121), and a certain Term Note (Loan No, 610074) (collectively the "Flushing Bank Loan"). Flushing Bank was granted a security interest in the Debtor's assets and filed financing statements under the Uniform Commercial Code.

10.     Prior to the Petition Date, Cardinal Health provided credit accommodations to the Debtor pursuant to the Agreement by and between Cardinal Health and the Debtor ("Cardinal Health Agreement") and (ii) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of Cardinal Health, including, without limitation, the security agreements, notes, guarantees, mortgages, UCC financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto.

11.     Cardinal Health, which has asserted that it is owed approximately $3,600,000.00, has filed a security interest in all of the Debtor's assets, including the prescription drug inventory. Cardinal Health's lien o the Debtor's assets, with the exception of the prescription drugs, is subordinate to Flushing Bank.

12.     Based on the UCC filings with the New York Secretary of State, Skyfi Capital Partners, Inc. ("Skyfi") has asserted that it is a secured creditor of Debtor. Skyfi's UCC was filed after those filed by Flushing Bank and Cardinal Health.

13.     Although the UCC has not been terminated, the Debtor asserts that Skyfi's lien, if any, is subordinate to Flushing Bank and Cardinal Health. However, to err on the side of caution, the Debtor has identified Skyfi as a secured creditor for the purposes of the interim relief being sought through this Application. However, the Debtor disputes the assertion that Skyfi is a

secured creditor, which issue should be resolved at a subsequent hearing. In January 2019, Skyfi filed a confession of judgment against the Debtor in the approximate amount of $340,000.00 and has since restrained one of the Debtor's bank accounts.

14.    In September 2018, Rochester Drug Cooperative, Inc. ("RDC") commenced a lawsuit against the Debtor seeking to recover the approximate sum of $3,450,000.00. Prior to the bankruptcy filing, RDC extended credit to the Debtor ("RDC Credit") for which it was granted a security interest in the Debtor's assets, including prescription drugs, and filed financing statements under the Uniform Commercial Code. RDC's security interest in the Debtor's assets is subordinate to Flushing Bank, Cardinal Health and Skyfi.

15.    Immediately prior to filing the bankruptcy petition, the Debtor's counsel attempted to work out a cash collateral consent arrangement with Flushing Bank, Cardinal Health and Skyfi and those efforts are continuing. Unlike Cardinal Health, the Debtor is not in possession of any of RDC's products and thus it has no interest in the Debtor's drug inventory. As such, the balance of its lien is subordinate to Flushing Bank and Cardinal Health.

16.    The Debtor's assets that are pledged to its secured creditors have an approximate value of $1,300,000.00.

17.    Consideration of this Application constitutes a "core proceeding" as defined in 28 U.S.C. Section 157(b)(2)(A), (K), (M), and (O).

18.    This Court has jurisdiction over this proceeding, the parties and property affected hereby pursuant to 28 U.S.C. Sections 157 and 1334.

### THE DEBTOR'S NEED FOR CASH COLLATERAL

19.    The Debtor is without the necessary cash to operate and pay for the daily business operations, pay its employees, advertising budget, rents, insurance and utility payments,

and without the use of the cash collateral, the Debtor would close. Thus, the Debtor will not be able to service and maintain its relationship with its customers which effectively constitutes the collateral of Flushing Bank, Cardinal Health, Skyfi and RDC.

20.    Included in the Debtor's need for use of cash collateral is the ability to pay the required utility bills and deposits required pursuant to section 366 of the Bankruptcy Code, in connection with its business location. Without the ability to use cash collateral, the Debtor runs the substantial risk of the termination of the utilities.

21.    Under the circumstances, and consistent with the need to use cash collateral, the Debtor asserts that good cause is shown which provides the basis to authorize the use of cash collateral. The Debtor's use of cash collateral will (i) minimize disruption of the Debtor's business and operations; (ii) permit the Debtor to meet payroll and other operating costs and expenses and otherwise maintain the collateral; (iii) be in the best interest of the Debtor, its creditors and other parties in interest; and (iv) aid efforts towards reorganization. In order to avoid immediate and irreparable harm to the Debtor pending a Final Hearing, and the concomitant harm to the Debtor's employees, its creditors and the estate in general, the Debtor requests the use of cash collateral on the terms and conditions set forth in this application and in accordance with the attached budget (the "Budget"). The Debtor's continued operations, which shall be made possible by the use of the cash collateral, will also preserve the value of the cash collateral itself.

22.    Section 363(c) authorizes the Court to allow the Debtor to use cash collateral. The Debtor is requesting permission to utilize cash collateral to meet its payroll expenses, its operating expenses, including utilities, rent, insurance and the other costs associated with the daily operations of the Debtor.

23.    Annexed to this Application and the Order is the Debtor's proposed eleven (11) month budget. The Debtor is requesting the use of cash collateral on an interim basis, pending the final hearing, on a pro-rata basis based upon the budget.[1]  (A copy of the proposed Budget is annexed hereto as Exhibit "A.")

## THE TERMS OF THE PROPOSED USE OF CASH COLLATERAL

24.    The Debtor seeks to prohibit Flushing Bank, Cardinal Health, Skyfi and RDC from setting off, recouping, or otherwise restraining any funds contained in any DIP account maintained at any financial institution, including, but not limited to DIP funds held in Flushing Bank, without first moving before the Court for an order terminating, annulling or otherwise modifying the provisions of section 362 of the Bankruptcy Code, upon written notice to the Debtor.

25.    Currently, certain funds paid to the Debtor are delivered to an entity known as Receivables Control Corporation and Leadernet and then transmitted to the Debtor. It is the Debtor's understanding that Flushing Bank is requiring this procedure to ensure that it receives a monthly payment from the Debtor, which was 3.5% of the collections as set forth in a Second Forbearance Agreement between Flushing Bank, the Debtor, and the Debtor's principal, Louise Gatti. The Debtor submits that this process will no longer be needed as all funds will be deposited into the Debtor's DIP accounts and will be duly accounted for. Any payments owed by the Debtor to Flushing Bank will be made promptly from that account. The cessation of this process will also ensure that the Debtor has the use of its funds quicker, which is greatly beneficial to the Debtor's business.

26.    The Debtor seeks authorization pursuant to sections 361, 362 and 363(e) of the Bankruptcy Code, to provide adequate protection for any diminution occurring subsequent to

---

[1] Except for the deposits required pursuant to section 366 of the Bankruptcy Code which are included in the interim relief.

February 7, 2019, in the value of Flushing Bank's, Cardinal Health's, Skyfi's and RDC's interest in the pre-petition collateral, including without limitation such diminution as may be caused by the imposition of the automatic stay of the Bankruptcy Code and section 362(a) and by the Debtor's use of the pre-petition collateral and/or cash collateral.

27.    The Debtor seeks authorization to grant Flushing Bank, Cardinal Health, Skyfi and RDC each a post-petition claim (the "Adequate Protection Claims") together with the pre-petition obligations (the "Obligations") jointly and severally against the Debtor's estate.

28.    The Debtor seeks authorization pursuant to sections 361 and 363(e) of the Bankruptcy Code, as security for the Adequate Protection Claims, to grant to Flushing Bank, and Cardinal Health for their respective ratable benefit, a valid, binding, enforceable and automatically perfected lien, security interest (collectively, the "Replacement Liens" and as so granted to Flushing Bank the "Flushing Adequate Protection Lien;" and as so granted to Cardinal Health the "Cardinal Health Adequate Protection Lien;" collectively, the Flushing Adequate Protection Lien and Cardinal Health Adequate Protection Lien, shall be referred to as "Adequate Protection Liens") in all of the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by the Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, to the extent acquired after the Petition Date, the "Post-Petition Collateral" and together with the Pre-Petition Collateral and the Cash Collateral, the "Collateral") to the extent that their Pre-Petition Collateral is used by the Debtor, except for the prescription drug inventory which is solely part Cardinal Health's collateral.

29.    The Debtor seeks authorization to provide that the Adequate Protection Liens shall be subject to liens and other interests in the property of the Debtor's estate existing as

of the Petition Date that are (i) valid, enforceable and not subject to avoidance by any trustee under the Bankruptcy Code; and (ii) senior under applicable non-bankruptcy law to, encumber assets not encumbered by Flushing Bank's, Cardinal Health's Skyfi's and RDC's liens in the Pre-Petition Collateral as of the Petition Date.

30.    The Debtor proposes that in the event that an official committee of unsecured creditors (the "Committee") is appointed under section 1102 of the Bankruptcy Code, it and the Debtor shall have a minimum of sixty (60) days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of any order approving the appointment of counsel for the Committee to investigate the facts and bring any appropriate proceeding with regard to the Debtor's stipulation (if any, and at all) to the validity, perfection, enforceability, priority and non-avoidability of Flushing Bank's, Cardinal Health's, Skyfi's and RDC's claim and liens, and the lack of any defense thereto.

31.    The Debtor proposes that in the event that no Committee is appointed in this case, then any party in interest shall have a minimum of seventy-five (75) days (or a longer period for cause shown before the expiration of such period) from the entry of any Final Order approving the Debtor's use of cash collateral, to investigate and file a motion seeking authority to bring any appropriate proceedings as representative of the estate.

32.    The Debtor seeks a determination that in the event that no adversary proceeding or stipulation extending the time to commence an adversary proceeding challenging the perfection, extent or validity of Flushing Bank's, Cardinal Health's, Skyfi's and/or RDC's pre-filing date liens are timely commenced as set forth herein, then such liens shall be deemed valid and perfected liens.

33.     The Debtor seeks a modification of the automatic stay provisions of section 362 to the extent necessary to permit (a) the Debtor to implement and perform the terms of any Interim Order; and (b) the Debtor to create, and Flushing Bank, Cardinal Health, Skyfi and RDC to perfect, their respective Adequate Protection Liens and other liens     granted in any Interim Order. The Debtor seeks authorization to provide that Flushing Bank, Cardinal Health, Skyfi and RDC shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the liens granted under any Interim Order or to take any other actions to perfect such liens, which liens shall be automatically perfected by the docketing of any Interim Order by the Clerk of the Court, at the time of the commencement of the Debtor's bankruptcy cases on the Petition Date.  However, should Flushing Bank, Cardinal Health, Skyfi or RDC elect for any reason to file, record or serve any such financing statements or other documents with respect to such liens, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of the chapter 11 case on the Petition Date.

34.     The Debtor seeks authorization to allow that the Adequate Protection Liens shall not be subject to any Lien which is avoided and which would otherwise be preserved for the benefit of the Debtor's estate under section 521 and the Adequate Protection Liens shall both encumber and constitute a prior Lien which is avoided and which would otherwise be so preserved for the benefit of the Debtor's estate. Flushing Bank, Cardinal Health, Skyfi and RDC shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to any of the Collateral.

35.     The Debtor shall not seek the entry of any further orders in this chapter 11 case which would authorize the Debtor under section 363, to use the Cash Collateral in which

9

Flushing Bank, Cardinal Health, Skyfi and RDC has an interest, or the sale, use or lease, other than in the ordinary course of business, of property of the Debtor in which Flushing Bank, Cardinal Health, Skyfi or RDC has an interest unless such proceeds from any such Order shall be used to repay the obligations to the extent they are determined to be secured in full, or in part, the extent of said liens, or any other grant of rights against the Debtor and/or its estate.

36. The Debtor shall be in default of any Interim Order based upon the following which shall be considered an "Event of Default": (a) the Debtor ceases its operations or take any material action for the purpose of effecting the foregoing without the prior written consent of Flushing Bank, Cardinal Health, Skyfi and RDC, except to the extent contemplated by the Budget; (b) the Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially and adversely affect the rights of Flushing Bank, Cardinal Health, Skyfi or RDC hereunder or shall materially and adversely affect the priority of any or all of the Obligations, Flushing Bank's Adequate Protection Liens, Cardinal Health Adequate Protection Liens; (c) the Debtor expends more than 110% of any line item in the Budget or more than 110% of the entire Budget; (d) the occurrence of a material adverse change subsequent to the Petition Date, including, without limitation, any such occurrence resulting from the entry of an order of this Court the effect of which has not been stayed, in each case as reasonably determined by Flushing Bank, Cardinal Health, Skyfi or RDC, in (1) the condition (financial or otherwise), operations, assets, business of the Debtor taken as a whole and with due regard to the Debtor's underlying business plan as evidenced by the Budget as the same be amended from time to time either with consent of Flushing Bank, Cardinal Health, Skyfi or RDC or by order of this Court, and/or (2) the value of the Collateral; (e) any material and/or intentional misrepresentation by the Debtor in the financial reporting or certifications to be provided by the

Debtor to Flushing Bank Cardinal Health, Skyfi or RDC under the respective loan documents and credit agreements, and/or any Interim Order; and (f) non compliance or default by the Debtor with any of the terms, provisions and conditions of any Interim Order, provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within ten (10) business days after notice of such non-compliance or default is provided to the Debtor and Debtor's counsel, in writing, to Weinberg, Gross & Pergament LLP, 400 Garden City Plaza, Garden City, New York 11530, Attn: Marc A. Pergament, Esq.

37.    The Debtor shall undertake to continue to keep the Collateral fully insured against all loss, peril and hazard and make Flushing Bank, Cardinal Health, Skyfi and RDC, for their ratable benefit, the additional insured in any such insurance policy maintained by the Debtor as to the Collateral. The Debtor shall timely pay any and all undisputed post-petition taxes, assessments and governmental charges with respect to the Collateral as provided for under the Loan Documents. The Debtor shall provide Flushing Bank, Cardinal Health, Skyfi and RDC with proof of insurance within five (5) business days of written demand and will give Flushing Bank, Cardinal Health, Skyfi and RDC reasonable access to its records in this regard.

38.    The Debtor shall provide Flushing Bank, Cardinal Health, Skyfi and RDC, upon five (5) business days written notice, at any time during the Debtor's normal business hours, the right to inspect, audit, examine, check, make copies of or extract from the books and records of the Debtor, and monitor the Collateral, and the Debtor shall make all of the same reasonably available to the Flushing Bank and their respective representatives, for such purposes.

39.    The Debtor agrees that for the purposes of an Interim Order, the term "Proceeds" shall mean any and all payments, proceeds or other consideration realized upon the

sale, or liquidation of the Collateral, whether in the ordinary course of the Debtor's business or other than in the ordinary course of the Debtor's business.

40.     The Debtor agrees that from the entry of any Interim Order and pending a Final Hearing and/or entry of any subsequent orders, the Post-Petition Indebtedness, if incurred, shall not, directly or indirectly, be used to pay administrative expenses of the Debtor and its estate except for those operating expenses (including the statutorily required fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any interest due thereon, as well as the costs and expenses of any chapter 7 trustee) that are set forth in the Budget or with the written consent of Flushing Bank and professional fees approved by the Court, or pursuant to a monthly compensation order, however, the Post-Petition Indebtedness shall be subject to a "Carveout" under the conditions contained in the Interim Order.

The Carveout

41.     The Carveout shall include (i) the payment of fees pursuant to 28 U.S.C. § 1930 and any interest due thereon, to the Office of the United States Trustee; (ii) any amounts allowed by the Court as fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $5,000.00; and (iii) prior to the occurrence of an Event of Default (as described herein) the actual amount of Court allowed professional fees and expenses of attorneys, accountants, financial advisors and consultants retained by the Debtor, any statutory committee appointed in the case, subject to the maximum amount set forth in the Budget; and (iv) in the event of a Termination Event, the payment of unpaid Court allowed professional fees and expenses (whether incurred prior to or following the Termination Event) of attorneys, accountants, financial advisors and consultants retained by the Debtor or any statutory committee appointed in the case, in an aggregate amount of $100,000.00 (the "Cap"), provided, that any Court

allowed professional fees incurred and paid prior to the Termination Event shall not apply to or otherwise reduce the Cap.

**GENERAL PROVISIONS OF THE PROPOSED CASH COLLATERAL ORDER**

42.     The Debtor proposes that the Interim Order would be binding upon and inure to the benefit of the Debtor and its respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case under any Interim Order for the benefit of any creditor of the Debtor, any other party in interest in the Debtor's bankruptcy case, or any other person or entities, or any direct, indirect or incidental beneficiaries thereof.

43.     The Debtor proposes that notwithstanding any potential application of Rules 6004(g), 7062, 9014 or otherwise of the Federal Rules of Bankruptcy Procedure ("Rule"), that the entry of any Interim Order be effective and immediately enforceable. Any Interim Order may not be stayed absent (a) an application by a party in interest for such stay in conformance with Rule 8005 and (b) a hearing upon notice to the Office of the United States Trustee, Flushing Bank, Cardinal Health, Skyfi and RDC.

44.     The Debtor proposes that the provisions of any Interim Order and any actions taken pursuant to the Interim Order shall survive entry of any orders which may be entered converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code. The terms and provisions of any Interim Order, as well as the Adequate Protection Claims, the Adequate Protection Liens and all other claims and liens granted by any Interim Order, shall (a) continue in its chapter 11 case or any superseding case under the Bankruptcy Code; (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (c) continue, notwithstanding any dismissal of the Debtor's

13

bankruptcy case, and such claims and liens shall maintain their priority as provided for in the Interim Order until the obligations are satisfied in full.

45.     In the event that any terms in any Interim Order conflict with the provisions of the loans and credit applications between the Debtor and each of Flushing Bank, Cardinal Health, Skyfi and RDC, the Interim Order shall be deemed to control and shall supersede the conflicting provision(s) in said agreements, provided, however, that nothing in any Interim Order shall amend, modify or supersede the provisions of the agreements which govern the rights and obligations of Flushing Bank, Cardinal Health, Skyfi and RDC as among themselves. To the extent that any of the provisions of any Interim Order shall conflict with any Order of the Court authorizing the Debtor to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then the Interim Order shall be deemed to control and supersedes the conflicting provisions in the said orders.

46.     The Debtor proposes to provide notice of any hearing to consider the entry of an Interim Order on the Office of the United States Trustee, the twenty largest unsecured creditors, counsel Flushing Bank, Cardinal Health, Skyfi and RDC, the secured creditors, and all parties filing a notice of appearance in this chapter 11 case (collectively, the "Notice Parties") by regular mail.

47.    No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, it is respectfully requested that the annexed Order be entered, together with other and further relief as to this Court seems just and proper.

Dated: Garden City, New York
       February 11, 2019

                               Weinberg, Gross & Pergament LLP
                               Proposed Attorneys for Debtor
                               and Debtor-in-Possession RX Plus, LLC


                        By:    /s/ Marc A. Pergament
                               Marc A. Pergament
                               400 Garden City Plaza, Suite 403
                               Garden City, New York  11530
                               (516) 877-2424